**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MOSHE GOLDFARB, On Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BURT'S BEES, INC. <br><br> Defendant. | Case No. 21-4904 <br><br> **CLASS ACTION** <br><br><br> **COMPLAINT** <br><br><br><br> **JURY TRIAL DEMANDED** |

Plaintiff , Moshe Goldfarb  ("Goldfarb" or "Plaintiff"), by his attorneys alleges, upon personal knowledge as to his own acts and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys, as follows:

## INTRODUCTION

Pet care industry participants have become acutely aware in recent years that pet parent consumers are trending toward "natural" and "organic" pet care products for their pets.  David Lummis, authoritative analyst of pet care trends in the U.S., recently opined as follows  at the 2021 Global Pet Expo Digital Access in Kansas City:

> Other continued trends . . . include humanization and premiumization, **human companies crossing over into the pet space, more natural formulations**, **increased focus on sustainability**, veterinary "retail-ization," and growth in digital pet care.  (bold ours)

Industry data provider Packaged Facts, a division of MarketResearch.com, estimates that the U.S. retail market for non-food pet supplies reached $15 billion in 2015, or half the size of the market for pet food products.

Responsive to trending consumer preferences for natural and organic pet care products, Defendant Burt's Bees, Inc.(hereinafter Burt's) created a line of dog shampoos and conditioners ("Shampoo"),[1] purporting to be "99.7% Natural" but, in reality, being highly synthetic  Burt's has perpetrated a massive deception on the American pet parent consumer through the marketing of its pet shampoos as "99.7% Natural."

## JURISDICTION AND VENUE

1.      Claims asserted herein arise under the laws of the State of New York.

2.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which certain of the Class members and Defendants are citizens of different states.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because many of the acts and transactions alleged herein occurred in substantial part in this District.

---

[1] The company markets pet shampoo, conditioner, lotion, ear cleaner, spray, and dental care. https://www.beaglesandbargains.com/product-review-burts-bees-natural-pet-care/

**BACKGROUND**

4.      Burt's Bees, Inc. is a Delaware Corporation with its principal place of business at 210 W. Pettigrew St., Raleigh-Durham, NC 27701.  The Company first developed a reputation for eco-friendly, natural products in the candle-making sphere in the 1980's, which led to personal care products, particularly its famously-successful lip balm.  Industry analysts studied Burt's closely concluding that "Burt's entire product line goes for a higher price than the standard market . . . They have set a higher standard with a higher price to all their products. Creating a higher valued product with all the natural resources they use."  Burt's was sold to Clorox Corporation in 2007.  By 2013 Burt's was marketing a full line of pet care shampoos and had presented its pet care line in the "natural" image achieved in personal care for people: "These [pet care] products uphold the high natural standards of all Burt's Bees products with a minimum of 95% natural ingredients and are also cruelty-free."  J. Shipman, Product Review: Burt's Bees Natural Pet Care (June 25, 2013) posted at https://www.beaglesandbargains.com/product-review-burts-bees-natural-pet-care/

5.      As of May 2021 Burt's has used its image of eco-friendly and natural to create consumer expectations which simply mislead:

Since 1984, Burt's Bees has been working in harmony with nature to create products that work for both people and planet. Burt's Bees Natural Pet Care was developed on the same foundation in a licensing partnership between Burt's Bees Licensing, LLC and Fetch for Pets.

Inspired by Burt's co-founder and avid dog lover, Burt Shavitz, we strive to bring that quality of grooming and oral

care products to pet parents.  Our pets are part of the family and deserve the very best in natural care. Burt's Bees Natural Pet Care products' manufacturing, packaging, and distribution adhere to the highest environmental standards and are made from safe, natural ingredients.[2]

6.      Plaintiff's household pet, whose name is Bo, was a four-month-old Rottweiler-Golden Retriever mix, with fairly short fur.  Golden Retrievers are prone to skin conditions and allergies.  Plaintiff sought out natural grooming products in deference to this propensity in Golden Retrievers.

7.      Plaintiff, a resident of Rockland County, New York, purchased containers of Product, to wit: Burt's Bees **2-in-1 Tearless Shampoo & Conditioner for Puppies** and Burt's Bees **Oatmeal Shampoo for Dogs** ("Products" at times), online at amazon.com, on April 28, 2021:

---

[2] https://www.burtsbeespets.com




8.     Plaintiff purchased the Products because they were advertised as being

99.7% Natural.

9.     As with all members of the Class, Plaintiff paid a premium for the

Products, i.e. beyond the price for comparable products, based upon the representation

that the Product is 99.7% Natural.  Plaintiff has since determined that most of the

ingredients in the Product are synthetic, i.e. *un*natural.

11.    Both Products contain the following synthetic ingredients: Coco Betaine,

Coco Glucoside, Glyceryl Oleate, Disodium Cocoyl Glutamate, Glycerin, Xanthan Gum,

Potassium Sorbate, and Sodium Benzoate.  Additionally, both Products contain minute

amounts of natural substances: Honey, Beeswax, Colloidal Oatmeal, Linum

usitatissimum (linseed) Oil, and Buttermilk Powder.

11.    After Bo was groomed with the Product, however, Plaintiff learned

through his own research that coco betaine is not natural, nor is it necessarily benign.  In

fact, it penetrates the skin and can be harmful to the pet.  Plaintiff has since learned that

that *all* of the Products' weightiest ingredients (aside from water), are synthetic, to wit:

Coco Betaine, Coco Glucoside, Glyceryl Oleate, Disodium Cocoyl Glutamate, Glycerin

and Xantham Gum.  Each Product also contains Potassium Sorbate and Sodium

Benzoate.

12.    Dog and cat owners have reported that their pets have died shortly after

using Burt's Bees shampoos.  Following an autopsy for a dead cat, the supervising

veterinarian commented:[3]

> I had several cases with a similar experience. It was a Burt's Bees product, not to
> say that Burt's Bees is in anyway responsible, but it was a Burt's Bees product
> that was used on their cats.
>
> They found that the entire GI track was ulcerated, the kidneys and multiple organs
> were shutting down. So they think a toxicity occurred. The cats had been
> grooming themselves and grooming each other and ingesting this [Burt's Bees]
> shampoo . . .

---

[3] https://www.counton2.com/news/south-carolina-news/savannah-man-
questions-burts-bees-pet-product-after-death-of-puppies/

13.     The same veterinarian had this to say of puppies using Burt's Bees: "Puppies aren't fully developed yet. They are still growing and things like that so it makes them susceptible to things like toxicities," *Id.*

14.     Both Burt's Bees Brand Engagement Manager and the manufacturer of Burt's Bees Shampoo for Dogs deny unsafe ingredients but, in the course of so doing, confirm (i) sales of tens of millions of units as of 2019, and (ii) water constitutes about 80% of product, and that (iii) only 3%-5% of the Products are natural:[4]

> Steven Shweky, the manufacturer says the company has sold tens of millions of bottles of the Burt's Bees Dog Shampoo and the claims are impossible. An average shampoo is about 80 percent water and the rest is about 15 to17 percent soap. The rest of it is natural oils. There's really nothing in there that is harmful and the small amounts of the essential oils we put in there are nowhere near enough to harm the dog. Even if the dog licks the shampoo off the skin of the coat, there's nothing that can happen, said Shweky.

15.     The above admission, that 15%-17% of the product is "soap," means (given the chemical nature of all subject primary ingredients)  that instead of .3% synthetic ingredient content, the Products had chemical constituents at least 50-fold of that represented.  Assuming Mr. Shweky's 15% (17%) soap and 80% water estimates, only 5% (3%) of the Product is natural . . . not 99.7% as represented.

16.     Unfortunately, Burt's Bees also manufactures and has manufactured a line of shampoos for humans, including babies, making the same or similar claims of nearly-

---

[4] https://www.wsav.com/news/local-news/only-on-3-manufacturer-of-dog-shampoo-says-claims-against-product-are-impossible/

100% Natural. These products too contain synthetic ingredients which, aside from water, constitute the vast bulk of product weight.

17. Consumers often seek natural products because they are aware that chemicals can bioaccumulate, meaning that even at low levels of toxicity, there is a risk of chronic poisoning. Surfactants in particular are subject to contamination with nitrosamines such as 1,4 dioxin (very unstable due to its peroxide-like characteristics).

## BURT'S LINE OF PRODUCTS

18. Class members (as defined below) (i) purchased one or more of the pet grooming Products pictured below, (ii) containing Defendants' 99.7% Natural representation, (iii) when, in fact, (a) each Product contained the primary surfactant, Coco Betaine, constituting 8%-15% of Product weight, (b) all other Products except "Waterless" contain Coco Glucoside, Glyceryl Oleate, Glycerin, Xanthan Gum of 2%-7% of Product weight, (c) "Waterless" contains all of the foregoing chemicals except coco glucoside, glyceryl oleate, and Xanthum Gum, and (d) all Products contain Potassium Sorbate, Phenoxyethanol, and/or Sodium Benzoate.

19. The manufacturer has confirmed that aside from water (80%) and oils (3%-5%), at least 15% of the Product consists of synthetic chemicals, which is 50 fold the represented .3%.[5]

20. The Shampoos and Conditioners pictured below will be referred to at times as the "Class Products."

---

[5] The numbers alleged in ¶¶18-19 are developed from the authorities referenced in ¶¶14 and 31.



PUPPY TEARLESS SHAMPOO

HYPOALLERGENIC SHAMPOO FOR CATS

TEARLESS KITTEN SHAMPOO

2 IN 1 TEARLESS SHAMPOO & CONDITIONER

SOOTHING HOT SPOT SHAMPOO

SKIN-SOOTHING SHAMPOO

SHED CONTROL SHAMPOO

WHITENING SHAMPOO

WATERLESS SHAMPOO

HYPOALLERGENIC SHAMPOO

ITCH SOOTHING SHAMPOO

CALMING SHAMPOO

DEODORIZING SHAMPOO

OATMEAL CONDITIONER

OATMEAL SHAMPOO

21.     Coco betaine is a synthetic surfactant that is derived from coconut oil,[6] which is synthesized for pet care and human care purposes.  Coco betaine has been associated with irritation and allergic contact dermatitis, reactions that could be due to the ingredient itself or to impurities present in it. Natural ingredients are not subject to impurities such as Dioxane 1,4, to which coco betaine is subject.[7]  There are natural surfactants, but coco betaine is not one of them.[8]

22.     Coco glucoside is a is a surfactant produced by chemical reaction between glucose and coconut oil-derived ingredients.  It is often derived by attaching glucose to an alcohol, a type of etherification, using toluene sulphonic acid as a catalyst.

23.     Glyceryl Oleate is composed of glycerin and oleic acid.  It does not occur in nature.[9] It is an irritant to skin, eyes, and lungs.

24.     Disodium Cocoyl Glutamate (usually from coconut oil) is a synthetic surfactant likely to be contaminated with unintended byproducts or petrochemical solvents.

---

[6] Surfactants are detergents with cleansing properties in dilute solutions. They are similar to soap but are more soluble in hard water,

[7] See D. Dick, "What is Coco Betaine," at  https://www.leaf.tv/articles/what-is-coco-betaine/

[8] S. De, S. Malik, A. Ghosh, R. Saha, "A Review of Natural Surfactants," at https://www.researchgate.net/publication/280639965_A_Review_on_Natural_Surfactants

[9] As an emollient, glyceryl oleate binds moisture to the skin and counters the drying effects of surfactants.

25.     Glycerin is an emollient that, according to the FDA, is a synthetic substance. 7 C.F.R. 205.603(a)(12). The glycerin used in Defendant's Products is not "natural" but instead manufactured through saponification, whereby fat molecules in vegetable oil are chemically altered using sodiumhydroxide, a highly toxic chemical.

26.     Xanthan gum is a synthetic thickening agent. Xanthan gum is not "natural" but is instead manufactured through fermentation or carbohydrates and subsequent treatment of the byproduct with isopropyl alcohol.

27.     Potassium sorbate is a preservative. Two studies have shown that potassium sorbate has statistically significant harm-causing potential to DNA. Potassium sorbate is produced industrially by neutralizing sorbic acid with potassium hydroxide. The precursor sorbic acid is produced in a two-step process via the condensation of crotonaldehyde and ketene. While sorbic acid is naturally occurring in some berries, virtually all of the world's production of sorbic acid, from which potassium sorbate is derived, is manufactured synthetically.

28.     Phenoxyethenol is a chemical solvent, created by treating phenol with ethylene oxide in an alkaline medium. It is classified as toxic, capable of having significant adverse effects on the central and peripheral nervous systems, and a known irritant to eyes, skin and lungs. Though found in green tea, as used commercially it is created synthetically in a laboratory.

29.     Sodium benzoate, a preservative, is produced by the neutralization of benzoic acid, which is itself produced commercially by partial oxidation of toluene with oxygen.

30.     Although the product packaging does not disclose ingredients by percentage of product weight, ingredients are listed in descending order of prominence. Under the First-Five Rule, i.e. the material ingredients of a shampoo are the first five listed on the packaging. Defendant has only minute amounts of natural products (aside from water).

31.     Current typical modern shampoo formulations are comprised of:[10]

| Ingredient | Percentage | Function |
| --- | --- | --- |
| deionized water | 73-90% | |
| primary surfactant | 8-15% active | foam/lather |
| secondary surfactant | 2-6% active | foam boosting/ thickening/mildness improvement |
| thickening polymers | 0-2% | |
| salt | 0-2% | thickening |
| opacifying/pearling agents | 0-1% active | |
| chelating agent | .05-.2% | improve hard water performance |
| conditioning polymers | 0-1% | anti-static, wet/dry conditioning |
| conditioning emollients | 0-1% | mostly Silicones for wet conditioning |
| fragrance | 0-.5% | |
| preservatives | .001-1% | |

32.     Plaintiff is appalled and disgusted, and now seeks to effect through this suit a much-needed correction of Defendant's unfair and deceptive practices.

## PRIOR FEDERAL TRADE COMMISSION PROCEEDINGS
## CONCERNING "100% NATURAL" CLAIMS

---

[10] https://knowledge.ulprospector.com/6253/pcc-shampoo-formulations-through-the-years/

33.     The Federal Trade Commission has made clear in its official pronouncements, rules and litigation that it is false and deceptive to advertise or package a product as "100% Natural" if it contains one or more synthetic products. https://www.ftc.gov/news-events/blogs/business-blog/2016/04/are-your-all-natural-claims-all-accurate.

34.     The Federal Trade Commission has made clear in its official pronouncements, rules and litigation that "[i]f companies market their products as 'all natural' or '100% natural,' consumers have a right to take them at their word." *Id.*

35.     The Federal Trade Commission has provided a uniform prerequisite of "100% Natural," i.e. having zero synthetic ingredients.

36.     As a multimillion dollar corporation and an international industry leader, Burt's is keenly aware of its regulatory environment and the risks associated with non-compliance.

37.     As to pets, The FTC's policies are clear:[11]

'Two-thirds of all Americans have pets at home, and they spend billions of dollars to ensure that their pets are healthy and well-fed,' said Jessica Rich, Director of the FTC's Bureau of Consumer Protection. 'Pet owners count on ads to be truthful and not to misrepresent health-related benefits.'

---

[11] The FDA does not regulate grooming products for pets:
"The animal counterpart of a cosmetic is commonly referred to as a 'grooming aid.' The Act defines a cosmetic as pertaining only to human use (21 U.S.C. 321(i)). Therefore, products intended for cleansing or promoting attractiveness of animals are not subject to FDA control." http://www.fda.gov/animalveterinary/resourcesforyou/ucm268125.htm

https://www.ftc.gov/news-events/press-releases/2016/08/mars-petcare-settles-false-advertising-charges-related-its

38.     Burt's has violated the law for many years, has not heeded the FTC's warnings, and has found great success in deceiving the public.

**FACTS**

39.     Many dogs suffer from sensitive skin, seasonal allergies, flea allergy dermatitis, hot spots, or skin infections. When a dog has itchy skin, s/he can benefit from shampoos that use ingredients like oat protein, aloe vera, eucalyptus, cedar and lavender oils, lemongrass, sage, chamomile, and spearmint.

40.     However, with sensitive-skinned dogs sometimes it is as much what is NOT in the product as what is.  The reasonable consumer perceives "99.7% Natural" as indicating the absence of synthetic substances, harsh detergents and toxic chemicals.

41.     The FTC has announced and warned publicly that to the extent a seller represents "natural," a product may not by synthetic, i.e. natural means the absence of synthetic ingredients:

> If companies market their products as 'all natural' or '100% natural,' consumers have a right to take them at their word. . . . According to the FTC, the companies pitched their products as 'all natural' or '100% natural,' but included synthetic ingredients. . . . If you advertise your product as 'all-natural' or '100% natural' and it contains artificial ingredients or chemicals, now is the natural time for a compliance check.

"Are your "all natural" claims all accurate?"  https://www.ftc.gov/news-events/blogs/business-blog/2016/04/are-your-all-natural-claims-all-accurate.

42.     Although each of the products in its line of Pet Shampoos contains—indeed, is dominated by--synthetic ingredients, Burt's deceptively and misleadingly

packages, labels, describes and markets numerous Products as "99.7% Natural, " as alleged above.

43.     Burt's knowingly and willingly deceives and misleads consumers by labeling and marketing its Products as "99.7% Natural" because it knows that all Products in the Product line are made with several *un*natural ingredients.

44.     "99.7% Natural" is a material factor in each consumer's selection of Products. Consumers acting reasonably under the circumstances, however, cannot detect the presence of synthetic products and, hence, may use such Products on their pets for months or years unwittingly.

45.     Burt's has individuated its 99.7% Natural Products to enable, unjustly, enhanced profitability and market share

46.     Throughout the Class Period and long before, Burt's systematically and prominently advertised, labeled and packaged its Products as substantially Natural such that any consumer shopping the Products was necessarily exposed to these misrepresentations.

47.     As far back as 2013 the Products were rolled out as no less than 95% Natural when, of course, that representation was untrue.  See https://www.prnewswire.com/news-releases/fetchfor-pets-introduces-burts-bees-natural-pet-care-line-of-products-200028921.html

48.     By 2017 the Products were represented as 99.2% Natural.  See http://goodnewsforpets.com/burts-bees-care-plus-burts-bees/; https://freshchalk-storage.imgix.net/p/P0/7UAEK9kjI

49.     Based on either Burt's online advertising or the Product bottle itself, any reasonable consumer would believe the Products to be substantially natural and not synthetic.  Indeed, on its own website, Burt's refers to many of its Products as "All Natural."[12]

## INJURY AND DAMAGES

50.     Plaintiff brings this lawsuit for injunctive relief, individually, to stem the ongoing deceptive practices, in contemplation of N.Y. Gen. Bus. Law § 349(h), attendant to Burt's's use of "99.7% Natural" and restore a measure of commercial decency where it is wanting.

51.     Plaintiff also brings this lawsuit for damage relief, individually and on behalf of a New York class, pursuant to Section 349(h) of the Business Code, to recover statutory damages.

52.     Based on Burt's representations that the products were 99.7% Natural, Plaintiff and the Class paid a premium for the products over comparable products that did not purport to be substantially All Natural.

53.     Other pet products brands for which Fetch for Pets manufacturers honestly disclose the ingredients of their pet shampoos.  For example, Arm & Hammer, made by the same manufacturer as Burt's, offers a Dog Shampoo referred to as "a gentle cleansing formula" and "made with natural ingredients," but does not  claim it's substantially all natural.[13]  In fact, Fetch for Pets manufactures a number of additional dog shampoos,

---

[12] https://www.burtsbeespets.com/product-page/oatmeal-shampoo-with-colloidal-oat-flour-honey
[13] The Arm & Hammer product discloses "Coconut Based Surfactants," which likely include Coco Betaine, Coco Glucoside, Disodium Cocoyl Glutamate, i.e. "First Five" surfactants in the Burt's Bees product line, also manufactured by Fetch for Pets.

none of which make the representation of near 100% Natural as does Burt's Bees, e.g.

Aurapet, Biosilk, CHI, Vet MD, and Martha Stewart.  Only Burt's Bees represents itself

as virtually 100% natural.  https://www.fetch4pets.com/grooming

54.     The honest brand (Arm & Hammer) fetches $3.97 for a 20 oz. bottle, i.e.

$.20 per ounce on Amazon, whereas the deceptively marketed 16 oz. Products (Burt's)

costs $6.98 i.e. $.43 per ounce.  Accordingly, it appears that Burt's enjoys a  greater-than

100% price premium due to its deceptive conduct . . . paid for by Americans who work

very hard for a paycheck.[14]

## CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action on behalf of himself (injunction) as a Private

Attorney General, addressing Burt's deceptive practice of representing "99.7%

Natural."[15]

56.     Plaintiff also brings this action, pursuant to Rule 23 of the Federal Rules

of Civil Procedure, on behalf of himself and a New York State Burt's Class, defined as:

> All persons who have purchased one or more of the Class Products at any time
> within the applicable statute of limitations (the "Class Period") within the State of
> New York

---

[14] Compare
https://www.amazon.com/s?k=https%3A%2F%2Fwww.amazon.com%2FArm-
Hammer-Deodorizing-Shampoo&i=pets&ref=nb_sb_noss with
https://www.amazon.com/Burts-Bees-Dogs-Natural-
Colloidal/dp/B00DTEV54Y/ref=sr_1_5?crid=1G6JU6WGQAP4E&dchild=1&keyword
s=burt%27s+dog+shampoo&qid=1621140258&sprefix=burt%27s+dog%2Cpets%2
C154&sr=8-5
[15] "To the extent the consumer protection acts authorize individuals to act as private
attorneys general, it is sensible to interpret the acts to permit an individual to obtain broad
injunctive relief."  Schatz v. Cellco P'ship, 842 F. Supp. 2d 594, 610 (S.D.N.Y. 2012).

57.     As used herein, the term "Class Member(s)" shall mean and refer to the members of the Class described above.

58.     Plaintiff reserves the right to amend the Class definitions, restructure the class or expand/limit the class as warranted by facts discovered.

59.     Excluded from the Class are Burt's; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge(s) to whom this case is assigned and any immediate family members thereof.

60.     Class-wide treatment is appropriate because Plaintiff can prove the elements of his damage claim on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

61.     Numerosity—Federal Rule of Civil Procedure 23(a)(1). The members of the Class are so numerous that joinder is impracticable. Upon information and belief, there are thousands of individual purchasers of the product at issue. The precise number of class members is unknown to Plaintiff, but may be ascertained, including by objective criteria. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

62.     Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) & 23(b)(3). This action involves common questions of law or fact, which predominate over any questions affecting individual members of the Class. Common questions include:

(a) Whether Burt's represented and continues to represent that Products are 99.7% Natural;

(b) Whether Burt's's marketing representations are false, deceptive, and misleading;

(c) Whether the net effect of Product packaging and/or advertising is likely to mislead a reasonable consumer;

(d) Whether Burt's had knowledge that its representations were false, deceptive, and misleading;

(e) Whether Burt's continues to disseminate its representations despite knowledge that the representations are false, deceptive, and misleading;

(f) Whether a representation that a product is 99.7% Natural is a material representation to a reasonable consumer;

(g) Whether Burt's violated Section 349 of New York Business Code;

(h) Whether Burt's's marketing and pricing of Products cause reasonable consumers to pay more for such products, as opposed to comparable products not claimed to be "99.7% Natural," and

(i) Whether Plaintiff and members of the Class are entitled to recover statutory damages of $50 per class member, per purchase, under Section 349(h).

63.     Burt's engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the primary, case-driving common questions that dominate this action.

64.     Typicality—Federal Rule of Civil Procedure 23(a)(3). Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all members of the Class were comparably injured through the uniform misconduct described above and were subject to Burt's's false, deceptive, misleading, and unfair labeling and marketing practices, including the false claims that Class Products are 99.7% Natural. Further, there are no defenses available to Burt's that would be unique to individual Class Members.

65.     Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).

Plaintiff is an adequate representative of the members of the Class because his interests do not conflict with the interests of the other members of the Class he seeks to represent; he has retained competent counsel with experience in complex class action litigation; and Plaintiff will prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect Class Members' interests.

66.     Superiority—Federal Rule of Civil Procedure 23(b)(3). A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Burt's, so it would be impracticable for members of the Class to seek redress for Burt's wrongful conduct on an individual basis. Individualized litigation would also pose the threat of significant administrative burden to the court system. Individual cases would create the potential for inconsistent or contradictory judgments, and would increase delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the streamlined benefits of singular adjudication and comprehensive supervision by one court. Given the similar nature of the class members' claims, the Class will be easily managed by the Court and the parties and will be managed more efficiently in this integrated class action than through multiple separate actions.

**COUNT I:**
**New York Consumer Protection from Deceptive Acts and Practices Act**
**(N.Y. Gen. Bus. Law §§ 349)**
**On Behalf of the New York Class**

67.     Plaintiff re-alleges all preceding allegations as though set forth at length.

68. New York General Business Law ("NYGBL") §349 provides: "Deceptive acts or practices in the conduct of any business, trade or commerce or the furnishing of any service in this state are hereby declared unlawful."

69.     Burt's representations of its Class Products are consumer oriented.

70.     As above alleged, Burt's engaged in deceptive acts and practices within the meaning of NYGBL §349 including, *inter alia,* statements on the Product packaging as follows:

  a.   the representation that the product is "99.7% Natural" was deceptive;
  b.   Burt's did not have "competent and reliable evidence," sufficient in quality and quantity based on standards generally accepted in the relevant fields when considered in light of the entire body of relevant and reliable evidence, to substantiate that the foregoing representation is true.

71.     Plaintiff read and reviewed Burt's's advertising content on amazon.com prior to purchase and the "99.7% Natural" representation was material to Plaintiff's decision to purchase Product.

72.     Burt's violated NYGBL §349 and, as a consequence of Burt's conduct, Plaintiff and the other members of the Class suffered injury and were actually damaged in an amount equal to the premium paid in respect of "99.7% Natural," rendering all entitled to recover statutory damages of $50 for each purchase made of Product.

**COUNT II**
**Violation of §§349-350 of the New York General Business Law (Injunction)**
**On Behalf of Plaintiff, Individually**

73.     Plaintiff re-alleges all preceding allegations as though set forth at length.

21

74.     Plaintiff is entitled to obtain injunctive relief to protect the public from

Burt's's deceptive practices:

> Given the afore cited purpose of the statute, to encourage private enforcement
> of consumer protection, to strongly deter deceptive business practices, and to
> supplement the activities of the New York State Attorney General in
> prosecuting consumer fraud complaints, I hold that the Legislature intended
> the irreparable injury at issue to be irreparable injury to the public at large, not
> just to one consumer.

*Schatz v. Cellco P'ship*, 842 F. Supp. 2d 594, 608 (S.D.N.Y. 2012), citing *McDonald v.*

*North Shore Yacht Sales, Inc.,* 134 Misc. 2d 910, 513 N.Y.S.2d 590 (Sup. Ct. 1987).

## PRAYER

WHEREFORE Plaintiff, on behalf of himself and the Class, prays as follows:

a.  An order certifying this case as a class action, designating Plaintiff as the
    representative of the Class, and designating his counsel as class counsel;

b.  A permanent injunction against Defendant Burt's enjoining and restraining it
    from representing within New York, in advertising, packaging. Labeling or
    other media, that its shampoo products or any of them is  "All Natural" or
    "Totally Natural;"

c.  Statutory damages pursuant to NYGBL §349;

d.  Attorney fees; and

e.  Costs.

### JURY DEMAND

Plaintiff demands a trial by jury as to all triable issues.

Respectfully submitted,

LAW OFFICES OF MARK SCHLACHET

/s/Mark Schlachet
43 West 43rd Street,
Suite 220 New York,
New York 10036-7424
(216) 225-7559
Email: markschlachet@me.com

9511 Collins Ave.-Ste. 605
Surfside, FL 33154

Attorneys for Plaintiff Moshe Goldfarb